## IN THE UNITED STATES BANKRUPTCY COURT FOR THE
## EASTERN DISTRICT OF TENNESSEE

In re

D&H MACHINE SERVICE, INC.

Case No. 3:16-bk-30308-SHB

Debtor

## MEMORANDUM ON FIRST APPLICATION OF
## HODGES, DOUGHTY & CARSON, PLLC, FOR COMPENSATION
## AND REIMBURSEMENT OF EXPENSES

**APPEARANCES**:     HODGES, DOUGHTY & CARSON, PLLC
                     Dean B. Farmer, Esq.
                     Post Office Box 869
                     Knoxville, Tennessee  37901
                     Attorneys for Debtor

                     SAMUEL K. CROCKER, ESQ.
                     UNITED STATES TRUSTEE
                     Kimberly C. Swafford, Esq.
                     Tiffany A. DiIorio, Esq.
                     Howard H. Baker, Jr. United States Courthouse
                     800 Market Street
                     Suite 114
                     Knoxville, Tennessee  37902
                     Attorneys for United States Trustee

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Debtor filed this Chapter 11 case on February 9, 2016.  On May 27, 2016, Debtor's counsel filed the First Application of Hodges, Doughty & Carson, PLLC, for Compensation and Reimbursement of Expenses ("First Application") [Doc. 62], seeking total compensation in the amount of $26,659.33, representing fees of $25,873.50 and expenses of $785.83, for the period of January 27, 2016, through April 30, 2016.  Notice and the opportunity for hearing were provided pursuant to Rule 2002(a) of the Federal Rules of Bankruptcy Procedure and E.D. Tenn. LBR 9013-1(h).  Notwithstanding that no objection was filed, on July 13, 2016, the Court set a hearing on the First Application [Doc. 71] in order to undertake its "fundamental, independent duty to review fee applications for reasonableness." *In re Parsons*, No. 02-65780, 2006 WL 3064085, at *2 (Bankr. N.D. Ohio Oct. 24, 2006).  On July 19, 2016, Debtor's counsel filed a Motion Amending First Application of Hodges, Doughty & Carson, PLLC, for Compensation of Fees and Expenses Nunc Pro Tunc to Date of Petition ("Amended Application") [Doc. 80], amending the First Application to seek fees *nunc pro tunc* to the petition date.[1]

The Court held a hearing on the First Application and the Amended Application on July 28, 2016, at which the United States Trustee raised concerns about the failure of Hodges, Doughty & Carson, PLLC ("HD&C") to disclose in either the Application to Employ Counsel, filed on February 9, 2016 [Doc. 9]; the Amended Application to Employ Counsel, filed on February 11, 2016 [Doc. 18]; or HD&C's Disclosure of Compensation of Attorney for Debtor(s), filed on March 3, 2016 [Doc. 45] that pre-petition legal fees and expenses had been incurred. Because of the Court's independent concern about the pre-petition fees sought by HD&C and the United States Trustee's concerns about non-disclosure, the Court asked for briefing.  The matter is now ripe for adjudication.

---

[1] The Court approved Debtor's employment of Hodges, Doughty & Carson, PLLC by Order entered March 7, 2016 [Doc. 47].  The employment order had already authorized the employment of HD&C *nunc pro tunc* to February 9, 2016 (the petition date).

# I.  ISSUES

The Court specifically asked for briefing on whether pre-petition fees may be awarded post-petition when the service provider took a retainer pre-petition and failed to draw down from the retainer to pay the fees incurred pre-petition so that no amount would be owed when the bankruptcy petition was filed.  The Court also asked for examples of court approval of pre-petition fees when a retainer could have been offset to "zero out" the fees before the case was filed.  Not surprisingly, neither HD&C nor the United States Trustee could find any such cases; nor could the Court.  Approval of fees in such a circumstance would not likely be the subject of a written opinion or an appeal.

As a result, the focus of the briefing was the opposing viewpoints for the question of whether a law firm that performs pre-petition bankruptcy-related services for the debtor is disinterested under § 327 as that term is defined by § 101(14) because the firm is a pre-petition creditor as defined by § 101(10).  A strict interpretation of these Code sections results in an unquestionably harsh result that "would virtually eliminate any possibility of legal assistance for a debtor in possession, except under a cash-and-carry arrangement or on a *pro bono* basis."  *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987).

Although the Court has surveyed the law on both sides of this issue (and summarizes it below), the circumstances of the instant fee application do not require the Court to pick a side in this particular legal argument.  The Court reaches this conclusion on a finding that § 329 is dispositive to the determination of whether to grant the request for pre-petition bankruptcy-related fees sought by HD&C.  Because HD&C failed to disclose the fees related to the pre-petition services it performed for Debtor, whether or not bankruptcy-related, and because such

non-disclosure is a violation of § 329, the Court will deny HD&C's application for pre-petition fees as a sanction.

## II.  PRE-PETITION SERVICES OWING WHEN THE PETITION IS FILED

The parties and the Court having spent significant time to survey the landscape of cases concerning the pre-petition fee issue, notwithstanding that it is not ruling on that issue, the Court will address the differing positions to provide guidance for HD&C and other debtors' counsel appearing before this Court.

The starting point, of course, is the Code.  Section 327 authorizes employment of professional persons with the court's approval if such professionals "do not hold or represent an interest adverse to the estate . . . and are disinterested persons."  11 U.S.C. § 327(a). "Disinterested person" is defined by § 101(14) as a person who "is not a creditor, an equity security holder, or an insider."  Section 101(10)(A) defines "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."  Also pertinent is § 1107(b), which provides:  "Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case."

Only one circuit court of appeals has addressed the question of whether debtor's counsel loses disinterestedness as a creditor when counsel is owed on the petition date for pre-petition bankruptcy-related services.  Although the First Circuit squarely stated its position on this issue, such was *dictum* in its decision in *In re Martin*, in which the exact question before the court was the propriety of a lawyer taking security for payment of attorneys' fees to be incurred while representing the client in connection with the bankruptcy proceedings.  817 F.2d 175, 176 (1st

Cir. 1987). Because the Martins were unable to pay a $5,000.00 retainer to the law firm they

chose as bankruptcy counsel, they instead invested $500.00 in a cash retainer and signed a note

for $100,000.00 that was secured by a second mortgage on real property not anticipated to be of

any consequence in the Chapter 11 case.

Debtors' counsel in *In re Martin*, 817 F.2d at 176, made very clear in their pre-

employment filings the full terms of their arrangement with the debtors. The bankruptcy court

authorized the engagement of the firm as debtors' counsel, and the issue of the mortgage-retainer

did not arise until the case converted to Chapter 7 and the trustee sought to abandon the

mortgaged property, to which the creditors' committee objected. *Id.* at 176-77. The bankruptcy

court invalidated the note and mortgage but allowed in large part the firm's application for

compensation, resulting in cross appeals by the debtors, who disagreed with the court's set-aside

of the mortgage, and the creditors' committee, who objected to the award of partial

compensation to debtors' counsel. *Id.* Only the debtors' appeal was before the First Circuit. *Id.*

at 177.

The First Circuit vacated the bankruptcy court's finding that the mortgage-retainer was

impermissible *per se* as an interest adverse to the bankruptcy estate under § 327(a). *Id.* at 183. In

so holding, the court addressed the question of whether unpaid pre-petition fees create a problem

under § 327(a):

> We turn, then, to a fuller consideration of § 327(a). At first blush, this
> statute would seem to foreclose the employment of an attorney who is in any
> respect a "creditor." But, such a literalistic reading defies common sense and must
> be discarded as grossly overbroad. After all, any attorney who may be retained or
> appointed to render professional services to a debtor in possession becomes a
> creditor of the estate just as soon as any compensable time is spent on account.
> Thus, to interpret the law in such an inelastic way would virtually eliminate any
> possibility of legal assistance for a debtor in possession, except under a cash-and-
> carry arrangement or on a pro bono basis. It stands to reason that the statutory
> mosaic must, at the least, be read to exclude as a "creditor" a lawyer, not

5

> previously owed back fees or other indebtedness, who is authorized by the court
> to represent a debtor in connection with reorganization proceedings —
> notwithstanding that the lawyer will almost instantaneously become a creditor of
> the estate with regard to the charges endemic to current and future representation.

*Id.* at 180 (citations omitted).

For this *dictum* proposition, the *In re Martin* court relied in part on a decision by the

Bankruptcy Court for the District of Utah, *In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1985),

which stated (also in *dictum*):[2]

> In the opinion of this Court, a law firm serving as general counsel for a
> debtor in possession, which is owed on the date of filing a pre-petition debt for
> legal fees or costs incurred solely for services rendered in contemplation of and in
> connection with the bankruptcy case, does not because of this debt hold an
> interest adverse to the estate nor does it lack disinterestedness in violation of
> Section 327(a) of the Code.  In this situation, these pre-petition fees and costs are
> recoverable as part of the fees allowed, under Sections 327, 329, and
> 330 of the Code and Bankruptcy Rule 2014.  It would be a disservice to the
> principles of bankruptcy policy to chill exploration of alternatives to bankruptcy
> by the debtor's counsel by denying its request for fees under these circumstances.

*Id.* at 849.

In another case relying on *In re Martin*, the bankruptcy court for the Southern District of

Ohio ruled against a debtor's attorney, holding that a lawyer's "status as a creditor holding a

prepetition security interest in Debtors' assets, taken as security for the payment of fees for

prepetition nonbankruptcy work, disqualifies him from appointment under § 327 and from

continuing as Debtors' unappointed Chapter 12 counsel."  *In re Watson*, 94 B.R. 111, 116

(Bankr. S.D. Ohio 1988) (Cole, J.).  As in *In re Roberts* and *In re Martin*, the court, in *dictum*,

stated its position against a strict interpretation of § 327(a) that would bar "any counsel from

appointment who asserted a claim for any services provided to the debtor prior to the filing of the

---

[2] The issue before the court in *In re Roberts* was whether a law firm's fees should be approved when the firm had
not disclosed conflicting involvements with individual-debtors who owned a corporate debtor that owed the firm for
pre-petition legal services unrelated to the bankruptcy case.

petition." *Id.* at 114. The court found that the reasoning of the *Roberts* court "reflect[ed] a realistic interpretation of § 327(a) and the legislative history behind it." *Id.* at 114-15.

Although the proclamations of these three courts are *dicta*, other courts have disagreed when squarely faced with the issue. In 2004, the Bankruptcy Court for the Middle District of Pennsylvania *sua sponte*[3] questioned the final fee application of debtor's counsel because it sought pre-petition fees related to the bankruptcy. *In re Lackawanna Med. Group, P.C.*, 323 B.R. 626, 628 (Bankr. M.D. Pa. 2004). As here, the firm had received a pre-petition retainer as security for the performance of both pre-petition and post-petition work. Also as here, the firm had a policy of not drawing down on a pre-petition retainer until after the court reviewed and approved fees in an appropriate application.[4] The *Lackawanna* court expressly disagreed with the *Martin* and *Roberts* courts because they "ignore[d] the plain, unambiguous language of §§ 327(a), 101(10)(A), and 101(14)(A)."[5] *Id.* at 633. The court then turned to language from the *Roberts* opinion to provide alternative solutions for counsel who desire to serve as debtors' counsel when they are owed prepetition fees, whether or not related to the bankruptcy case:

---

[3] The United States Trustee at all times supported the fee application in its entirety. *In re Lackawanna Med. Group, P.C.*, 323 B.R. 626, 628 n.2 (Bankr. M.D. Pa. 2004).

[4] Distinct from this case, the firm indicated that it was a secured creditor on the petition date "with the firm's security interest being perfected by its possession of the retainer in its escrow account." *Id.* at 628-29. Here, HD&C maintains (without citation to authority) that it is not a creditor because "until the Bankruptcy Court approves the fees, there are no fees or claims against the debtor." [Doc. 113 at p. 3.] Notwithstanding this assertion, HD&C appears to be a secured creditor by virtue of the retainer because Tennessee law recognizes a possessory lien by an attorney who retains "a client's books, papers, securities, or money" to ensure payment of a fee. *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222, 227 (Bankr. E.D. Tenn. 2006) (quoting *Starks v. Browning*, 20 S.W.3d 645, 650 (Tenn. Ct. App. 1999)).

[5] HD&C noted (in an oddly placed footnote in its initial brief) that the *Lackawanna* court "became misguided by relying on the Third Circuit case, *United States Trustee v. Price Waterhouse* 19 F.3d 138 (3rd Cir. 1994) [*sic*]." [Doc. 107 at p. 5.] This Court disagrees with HD&C's reading of the *Lackawanna* decision. The court accurately stated the holding of *Price Waterhouse* – that a debtor-in-possession may not "retain[] a pre-petition creditor to assist it in the execution of its title 11 duties." *In re Lackawanna Med. Group*, 323 B.R. at 630 (quoting *Price Waterhouse*, 19 F.3d at 141). The court simply read the applicable Code sections as not distinguishing between pre-petition fees for non-bankruptcy services and pre-petition fees for case-related services after thoroughly examining and rejecting the reasoning of the courts in *In re Martin* and *In re Roberts*. *Id.* at 630-33 ("Both *In re Martin* and *In re Roberts* ignore the plain, unambiguous language of §§ 327(a), 101(10)(A), and 101(14)(A).").

A less drastic approach would require the law firm to obtain from its client its fees and costs in a contemporaneous exchange for its services unrelated to the bankruptcy case. This could be accomplished in a number of ways. For example, the law firm could obtain a pre-service retainer to cover work unrelated to the bankruptcy case and deduct from this retainer the sums owed as they come due. This deduction could take place either as the legal work is accomplished or at the end of regular billing periods.

It is the opinion of this Court that, even without obtaining such a pre-service retainer, a law firm that bills regularly and is paid in the ordinary course of its business and the business of the debtor, would obtain its fees as part of a contemporaneous exchange.

*Id*. at 633-34 (quoting *In re Roberts*, 46 B.R. at 850).

Another decision in which a bankruptcy court refused to award fees for pre-petition, case-related services is *Kun v. Mansdorf (In re Woodcraft Studios, Inc.)*, 464 B.R. 1 (N.D. Cal. 2011) (affirming the bench decision of the bankruptcy court), *aff'd*, 558 F. App'x 755 (9th Cir. Feb. 11, 2014) (unpub. op.).  There, debtor's counsel disclosed a $5,000.00 pre-petition retainer but did not disclose pre-petition case-related services.  *Id.* at 5.  Counsel filed a fee application that first disclosed the pre-petition services, and the bankruptcy judge denied all fees and required disgorgement of the retainer because the disclosure was inadequate under § 327 and Rule 2014.[6] *Id.* at 5.  As in *In re Lackawanna*, the bankruptcy court in *In re Woodcraft* explained that counsel should draw down from a pre-petition retainer to avoid being a creditor and not disinterested under §§ 101(14) and 327(a):

If you represent somebody before the filing, either you have a retainer, which apparently you obtained some sort of a retainer, $5,000, what attorneys do is they draw down on those fees that were incurred pre-petition, advise the Court that from, say, a $5,000 retainer, I provided services of $3,950. I've deducted that,

---

[6] HD&C argues that *In re Woodcraft* stands for the proposition that counsel should not set off pre-petition fees from the pre-petition retainer without court approval. [Doc. 113 at p. 3.]  Such an argument ignores the clear statement by the district court that the bankruptcy judge denied all fees and ordered disgorgement of the retainer *before* counsel revealed that he had already spent the retainer.  *Id.* at 5.  That is, the bankruptcy court ruled against debtor's counsel based solely on the failure to disclose the pre-petition services.  HD&C has the same problem here, as will be addressed below.

and I have a remaining retainer of $1,050. You didn't do that here, so you were not disinterested. You had fees that were owed pre-petition. You didn't draw down on the retainer; you didn't waive those fees; and you didn't even bring it to the Court's attention. There's a total failure of candor to the tribunal. You know, on that basis alone, I can deny your fee application in total.

*Id.* at 5-6.

In *In re Madera Roofing, Inc.*, No. 13-16954-B-11, 2014 WL 4796758, at *5-8 (Bankr. E.D. Cal. Sept. 25, 2014), the bankruptcy court found that the debtor's attorneys' failure to draw down on a $50,000.00 pre-petition retainer for pre-petition case-related services constituted grounds to deny counsel's fee application because the pre-petition fees constituted a "claim" against the debtor that destroyed counsel's disinterestedness.  This was so even though counsel's failure to draw down on the pre-petition retainer was explained as an inadvertent clerical error. *Id.*  The court also faulted counsel for failure to make full disclosure even though the attorney "was fully aware that [the firm] had provided substantial Prepetition Services to the Debtor and . . . had not yet applied its Retainer to pay for those Services."  *Id.* at *7.

Indeed, several other courts also have expressly acknowledged the typical practice for counsel to draw down on a pre-petition retainer to pay pre-petition case-related fees or, alternatively, to waive the pre-petition fees in order to avoid being considered a pre-petition "creditor" and, thus, not "disinterested" under the Code.  *See, e.g.*, *In re Fresh Choice, LLC*, No. 12-46157 RLE, 2014 WL 929018, at *4 (Bankr. N.D. Cal. Mar. 10, 2014); *In re Sundance Self Storage-El Dorado LP*, 482 B.R. 613, 627 n.37 (E.D. Cal. 2012); *In re SBMC Healthcare, LLC*, 473 B.R. 871, 879 n.8 (Bankr. S.D. Tex. 2012); *In re 7677 East Berry Ave. Assocs., L.P.*, 419 B.R. 833, 852-53 & n.92 (Bankr. D. Colo. 2009); *In re Printcrafters, Inc.*, 208 B.R. 968, 977 (Bankr. D. Colo. 1997); *cf. In re Old Summit Mfg., LLC,* 323 B.R. 154, 157-58, 161 (Bankr. M.D. Pa. 2004); *In re Fibermark, Inc.*, No. 04-10463, 2004 WL 2418317, at *6 (Bankr. D. Vt.

Oct. 22, 2004).  At least one court even has a local rule that requires an application for

employment to "disclose all pre-petition fees and expenses drawn down against the retainer, and

any written retainer agreement shall be attached to the application."  *In re Ridgerunner, LLC*,

No. 11-20369-TLM, 2011 WL 2112038, at *1 n.1 (Bankr. D. Idaho May 26, 2011).

Courts that fall on the side of requiring either waiver of pre-petition fees or drawing

down of a pre-petition retainer to pay for pre-petition, case-related services are strictly construing

the Code.  The Sixth Circuit Court of Appeals has not ruled on the issue; however, as the

bankruptcy court for the Eastern District of Kentucky recently noted:

> The requirements of § 327(a) are strictly construed in the Sixth Circuit. A
> "professional seeking to be hired 'can have neither an "adverse interest" nor be an
> "interested person."'" *In re BBQ Res., Inc.*, 237 B.R. 639, 642 (Bankr. E.D. Ky.
> 1999) (Howard, J.) (quoting *Michel v. Federated Dep't Stores, Inc. (In re
> Federated Dep't Stores, Inc.)*, 44 F.3d 1310, 1319 (6th Cir. 1995)).  The Court
> cannot use its equitable powers to approve the employment of a professional who
> is not disinterested even if it determines that employment is in the best interest of
> all parties and even if such employment is the most efficient and economical way
> to proceed with administration of the case. *Michel v. Eagle–Picher Indus., Inc. (In
> re Eagle–Picher Indus., Inc.)*, 999 F.2d 969 (6th Cir. 1993); *Childress v.
> Middleton Arms, L.P. (In re Middleton Arms, Ltd. P'ship)*, 934 F.2d 723 (6th Cir.
> 1991).

*In re Licking River Mining, LLC*, No. 14-10201, 2015 WL 5601284, at *6 (Bankr. E.D. Ky. Sept.

22, 2015).[7]  In *In re Eagle-Picher Industries*, the Sixth Circuit limited the application of §

1107(b) to its plain meaning "even when the application apparently results in an apparent

anomaly."  999 F.2d at 972.  The court held that § "1107(b) carves out a narrow exception meant

to apply only when the sole reason for disqualification is former employment."  *In re BBQ Res.,

Inc.* 237 B.R. 639, 641 (Bankr. E.D. Ky. 1999) (citing *In re Eagle-Picher Indus.*, 999 F.2d 969).

---

[7] The Court acknowledges that current Sixth Circuit Chief Judge R. Guy Cole, Jr., when he was a bankruptcy judge,
authored *In re Watson*, 94 B.R. 111, 114-15 (Bankr. S.D. Ohio 1988) and, relying on *In re Martin* and *In re
Roberts*, expressed (in *dictum*) his inclination not to apply a strict interpretation of § 327(a) to "bar any counsel from
appointment who asserted a claim for any services provided to the debtor prior to the filing of the petition."

Further, in *In re Middleton Arms, Ltd. P'ship*, 934 F.2d 723, 725 (6th Cir. 1991), the Sixth

Circuit refused "to use [S]ection 105 to circumvent the clear directive of [S]ection 327":

> Section 327(a) clearly states, however, that the court cannot approve the
> employment of a person who is not disinterested, even if the person does not have
> an adverse interest. This Court has held that bankruptcy courts "cannot use
> equitable principles to disregard unambiguous statutory language." *In re C-L
> Cartage Co., Inc.*, 899 F.2d 1490, 1494 (6th Cir. 1990). Therefore, the District
> Court was correct in reversing the Bankruptcy Court. The equitable powers of
> section 105(a) may only be used in furtherance of the goals of the Code. By
> forbidding employment of all interested persons, section 327 prevents individual
> bankruptcy courts from having to make determinations as to the best interest of
> the debtors in these situations.

The *Middleton Arms* court also made clear that "the section 1107(b) exception does not apply to

all interested persons, but only to those who fail to be disinterested solely because of prior

employment." *Id.* Thus, based on prior Sixth Circuit precedent on related issues, it appears that

the court might strictly construe § 327 in a way that would require either waiver of pre-petition

case-related fees or application of a retainer as payment for pre-petition case-related fees in order

for debtors' counsel to avoid being treated as a "creditor" under the Code.

HD&C argues that a pre-petition draw on the pre-petition retainer to credit case-related

pre-petition services puts the firm at risk of having to litigate its disinterestedness because of a

possible preference claim.  The Third Circuit case that is oft cited for the proposition that

bankruptcy courts may not authorize appointment of counsel without first determining whether a

preference exists is *In re Pillowtex, Inc.*, 304 F.3d 246 (3d Cir. 2002).  Critically, the holding in

*Pillowtex* does not prohibit appointment of counsel on the mere specter of a preference claim:

"We hold that when there has been a *facially plausible claim of a substantial preference*, the

district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the

mere expedient of approving retention conditional on a later determination of the preference

issue." *Id.* at 255 (emphasis added).  As the court explained in *In re Roberts*, however, "even

without obtaining such a pre-service retainer, a law firm that bills regularly and is paid in the ordinary course of its business and the business of the debtor, would obtain its fees as part of a contemporaneous exchange." 46 B.R. at 850. The District of New Jersey agreed when it found that a pre-petition payment from a retainer for prospective case-related services "cannot constitute avoidable preferential transfers as they were not made on account of an antecedent debt." *In re Rockaway Bedding, Inc.*, No. 07-14898, 2007 WL 1461319, at *4 n.4 (Bankr. D.N.J. May 14, 2007) (citing 11 U.S.C. 547(b)(2); *In re Pillowtex*, 304 F.3d at 246[8]). This Court could find no case in which a pre-petition draw from a retainer for pre-petition, case-related services was deemed (or even claimed to be) a preference.

Considering all of this, debtors' counsel appearing before this Court who take the route of billing the client for pre-petition preparation prior to filing the case and drawing down the pre-petition fees from any retainer funds held in escrow – while disclosing such to the Court – will most likely pass scrutiny by this Court.

### III. DISCLOSURE OF PRE-PETITION SERVICES UNDER § 329

Whether or not a retainer is provided and drawn from for pre-petition, case-related services, counsel absolutely must disclose to the Court the amount (or estimated amount) of any pre-petition services provided and the status of the fees charged or to be charged for such services. Here, this Court need not reach the controversial question of whether professionals are *required* to draw down from pre-petition retainers for pre-petition, case-related services or waive fees for such services when filing a petition for their clients in order to be appointed and paid as

---

[8] HD&C cites to *Pillowtex* as the source of its concern that a preference claim might be raised against it for drawing down from a pre-petition retainer for pre-petition case-related services. Notably, the record in *Pillowtex* did not reveal how much of the fee that the law firm received within the preference period was for bankruptcy preparation services. *In re Pillowtex*, 304 F.3d at 253. Moreover, the decision has not been cited by the Sixth Circuit or by any district court within the Sixth Circuit. Indeed, only one bankruptcy court within the Sixth Circuit has cited the *Pillowtex* decision (*i.e.*, *In re Licking River Mining*, 2015 WL 5601284, at *9).

debtors' counsel in a bankruptcy case. This is so because HD&C violated the disclosure

requirements of § 329 and Rule 2016 by failing to disclose that it had performed thirteen days of

pre-petition services for which it intended to seek payment post-petition.

Section 329 of the Bankruptcy Code provides:

> (a) Any attorney representing a debtor in a case under this title, or in connection
> with such a case, whether or not such attorney applies for compensation under this
> title, shall file with the court a statement of the compensation paid *or agreed to be
> paid*, if such payment or agreement was made after one year before the date of the
> filing of the petition, *for services rendered or to be rendered in contemplation of
> or in connection with the case by such attorney*, and the source of such
> compensation.

11 U.S.C. § 329(a) (emphasis added). Federal Rule of Bankruptcy Procedure 2016(b), which

implements § 329(a), specifies:

> Every attorney for a debtor, whether or not the attorney applies for compensation,
> shall file and transmit to the United States trustee within 14 days after the order
> for relief, or at another time as the court may direct, the statement required by §
> 329 of the Code including whether the attorney has shared or agreed to share the
> compensation with any other entity. The statement shall include the particulars of
> any such sharing or agreement to share by the attorney, but the details of any
> agreement for the sharing of the compensation with a member or regular associate
> of the attorney's law firm shall not be required. A supplemental statement shall be
> filed and transmitted to the United States trustee within 14 days after any payment
> or agreement not previously disclosed.

As explained by the Sixth Circuit Court of Appeals in *Henderson v. Kisseberth (In re

Kisseberth)*, 273 F.3d 714, 721 (6th Cir. 2001),[9] *aff'g* No. 3:99CV7567, 2000 WL 1177443

(N.D. Ohio Mar. 31, 2000), *aff'g* No. 94-31132, 1999 WL 33501721 (Bankr. N.D. Ohio July 23,

1999), "[a]n attorney in a bankruptcy case has an affirmative duty to disclose fully and

completely all fee arrangements and payments." The attorney for debtors in *Kisseberth* disclosed

that he had been paid a retainer, but he did not disclose "that during the approximately two

---

[9] The Court notes that *In re Kisseberth* was cited by the Northern District of California in *In re Woodcraft Studios, Inc.*, 464 B.R. 1, 10 (N.D. Cal. 2011) (affirming the bankruptcy court's disallowance of pre-petition, case-related fees), discussed above.

months preceding the filing of the Debtors' bankruptcy petition, [the attorney] had actually

incurred . . . $5,420.00 in legal fees as the result of billing to the Debtors approximately fifty (50)

hours for his legal services." *In re Kisseberth*, 1999 WL 33501721, at *1.

The bankruptcy court in *Kisseberth* explained that Congress's inclusion of § 329

expressed "an intent that all fees incurred by an attorney in connection with a bankruptcy case be

disclosed, regardless of whether or not such fees were actually paid at the time the Compensation

Statement was filed with the bankruptcy court." *Id.* at *6. The statutory text requiring disclosure

of any compensation "agreed to be paid . . . for services rendered" would be superfluous if not

read to require disclosure of fees agreed to be paid for pre-petition services rendered even if, as

HD&C argues, such fees would not be paid until approved by the Court following a post-petition

appointment and application for compensation. *See id.* In affirming the bankruptcy court, the

district court held:

> On consideration of the importance of the fee disclosure requirement, the extent
> to which that requirement was almost totally disregarded by an experienced
> bankruptcy practitioner, and the need to compel future compliance on his part,
> and the part of all counsel appearing in Bankruptcy Court, I conclude that Chief
> Judge Speer's disgorgement decision is neither clearly erroneous nor an abuse of
> discretion.

*In re Kisseberth*, 2000 WL 1177443, at *4.

In another case in which counsel failed to disclose his fee agreement with debtors for pre-

petition services in contemplation of their bankruptcy petitions, even though such fees had been

waived, and additionally failed to disclose merchandise transfers from debtors to counsel during

the preference period, the Eastern District of Michigan observed that "Rule 2014(a) requires

mandatory disclosure [and] imposes upon those professionals who are appointed under § 327(a)

a duty to fully and completely disclose any and all connections with debtors, and precludes them

from exercising any discretion in deciding which connections merit disclosure. Significantly,

negligence regarding disclosure is no excuse." *Halbert v. Yousif*, 225 B.R. 336, 346 (E.D. Mich. 1998). No less is true for the disclosure required under Rule 2016(b).

Notably, debtors' counsel in *In re Martin*, which HD&C asks the Court to follow, filed an application for employment that "made a clean breast of the terms and conditions of the retainer and other accoutrements of the fee arrangement as required by Bankruptcy Rule 2016(b)," including the details about the mortgage that secured future fees. 817 F.2d 175, 176 (1st Cir. 1987). In deciding whether the security interest taken by the firm was appropriate, the court indicated that the "inquiry is of necessity case-specific. *There must be at a minimum full and timely disclosure of the details of any given arrangement.*" *Id.* at 182 (emphasis added).[10]

As explained by the Sixth Circuit,

> The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate attorney fees are designed to protect both creditors and the debtor against overreaching attorneys. *In re Walters*, 868 F.2d 665, 668 (4th Cir. 1989). To ensure such protection, bankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules. *In re Downs*, 103 F.3d 472, 479 (6th Cir. 1996) (denying all compensation to an attorney who disregarded his obligation to disclose his fee arrangement under § 329 and Rule 2016); *Matter of Prudhomme*, 43 F.3d 1000, 1003 (5th Cir. 1995) (concluding that a bankruptcy court may order disgorgement as a sanction against the debtor's counsel for failing to disclose fees). Disgorgement may be proper even though the failure to disclose resulted . . . from negligence or inadvertence. *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir.1995) ("Even a negligent or inadvertent failure to disclose fully relevant information [in a Rule 2016 statement] may result in a denial of all requested fees.").

*In re Kisseberth*, 273 F.3d at 721.

---

[10] Indeed, in the one case from the Eastern District of Tennessee that assumes without deciding that debt owed to counsel for case preparation services does not disqualify counsel from representing the debtor-in-possession, Judge Kelley referenced § 329 and Rule 2017, apparently meaning that such must be disclosed: "The court takes it as settled that an attorney first hired for the purpose of filing the chapter 11 petition is not disqualified from representing the debtor-in-possession on the ground that he has not been paid the entire fee he requested. 11 U.S.C. § 329; Bankr. Rule 2017." *In re Best Western Heritage Inn P'ship*, 79 B.R. 736, 739 n.2 (Bankr. E.D. Tenn. 1987).

Here, HD&C filed its initial application for employment as Debtor's counsel on the day

that the petition was filed.  The application itself contained the following information:

> 5.  Debtor has provided a retainer for the representation of the Debtor for
> legal services and expenses incurred on behalf of the Affiant and their firm and
> counsel has $20,000 held in retainer account as of the date of the Petition. The
> Debtor has agreed to make continual additions to its retainer such that if fees and
> expenses incurred exceed 2/3 the amount of the retainer, it will be immediately
> replenished to the full amount of $20,000.

> 6.  Counsel has previously represented the Debtor with respect to
> representation regarding post-judgment collection defenses and has been paid a
> retainer in the amount of  $2,000.00 on December 21, 2015, prior to performing
> those legal services and there is no outstanding balance due to Counsel regarding
> this representation.

Application to Employ Counsel [Doc. 9] ("Employment Application"), p. 2.[11]  The Affidavit of

Professional Person attached as Exhibit A to the Employment Application ("Affidavit"), signed

by Attorney Farmer under penalty of perjury, stated:

> 1.  Dean B. Fanner is a duly licensed attorney in the State of Tennessee
> and authorized to practice before the Supreme Court and all other courts of the
> state.

> 2.  Affiant has reviewed the legal work required on behalf of the above
> bankruptcy estate and is well qualified to perform the services.

> 3.  Affiant and the members of his law firm, Hodges, Doughty & Carson,
> PLLC, (the "Firm") are familiar with the requirements of 11 U.S.C. § 101(14) that
> they be disinterested persons, and Affiant and the members of his law firm do not
> hold or represent any interest adverse to the estate as defined therein.

> 4.  The Affiant was retained for the purpose of reviewing financial matters
> and for potential reorganization and, if necessary, filing a Chapter 11 bankruptcy
> on behalf of the above-captioned Debtor. The Affiant has in trust the amount of
> $20,000 initially to represent the Debtor.

---

[11] HD&C filed an Amended Application to Employ two days later.  Amended Application to Employ Counsel
("Amended Employment Application") [Doc. 18].  The only change in the Amended Employment Application,
including Exhibit A, was the omission of the notice of hearing and the addition of 21-day passive notice under the
Local Rules.

5.  The undersigned does not know of any adverse interest related to these entities and the Debtor, such that the Firm would not be disinterested pursuant to 11 U.S.C. § 101(14).

6.  Affiant and his law firm practice in the Knoxville community at 617 Main Street, Knoxville, Tennessee 37902.

Twenty-five days later, on March 3, HD&C filed its Rule 2016 Disclosure of Compensation of

Attorney for Debtor(s) ("Disclosure") [Doc. 45], shown below.

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1.  Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept .................................................... $ _____ N/A

   Prior to the filing of this statement I have received ........................................ $ _____ N/A

   Balance Due ................................................................................. $ _____ N/A

2.  $1717.00 _____ of the filing fee has been paid.

3.  The source of the compensation paid to me was:

   ☒ Debtor    ☐ Other (specify)

4.  The source of compensation to be paid to me is:

   ☐ Debtor    ☒ Other (specify):    principals of the Debtor who are not creditors will make additional retainer payments

5.  ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm.  A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6.  In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a.  Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b.  Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c.  Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d.  [Other provisions as needed]
       Counsel has agreed to represent the Debtor under the terms and conditions set forth in the Application to Employ Counsel and the appropriate disclosure with Affidavit attached.

7.  By agreement with the debtor(s), the above-disclosed fee does not include the following service:

| CERTIFICATION |
|---|
| I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding. |

Dated:   3/3/16 _____        /s/ Dean B. Farmer _____
                                               Dean B. Farmer 006851
                                               Hodges, Doughty & Carson, PLLC
                                               P.O. Box 869
                                               Knoxville, TN 37901
                                               865-292-2307  Fax: 865-292-2252

First, HD&C's Disclosure was filed late.  Rule 2016(b), which applies in every case,

requires the compensation disclosure to be filed within fourteen days after the order for relief,

which was entered here on February 11.  Thus, the disclosure was due no later than February 25.

Although Debtors sought and obtained an additional extension of time until March 4 [Docs. 31,

32] to file statements and schedules identified on the Notice of Additional Documents to be Filed

issued by the clerk on February 9 [Doc. 8], that Notice did not include the Rule 2016 disclosure,

which is the obligation of the attorney, not a debtor.

More significantly, the Disclosure is not accurate in that it shows only "N/A" concerning

the agreement with Debtor, the retainer or other amount received, and the balance due.  This

Court finds inadequate the reference in section 6 to the Employment Application and Affidavit,

especially since neither the Affidavit nor the Employment Application reveal the pre-petition

services[12] performed in the thirteen calendar days before the petition was filed.  Such services

total $5,938.00.  HD&C argues that "[t]he exact amount of the fees incurred pre-petition are

usually unknown until some period of time after filing the bankruptcy petition."  [Doc. 107 at p.

7.]  In this age of electronic billing systems, the Court finds it implausible that a firm of the

reputation and resources of HD&C would be unable to determine the amount of its fees incurred

before a case is filed by the fourteenth day following a bankruptcy case filing (and, in this case,

twenty-three days after the case was filed, the disclosure not having been filed until March 3).

At the very least, counsel must disclose that pre-petition services were incurred over a specified

number of days and that the disclosure will be amended once the pre-petition fees are calculated.

Here, it was not until filing the First Application on May 27, 2016 (some 108 days after the

petition was filed) that HD&C first disclosed the existence of pre-petition fees.

HD&C further argues that "it was not a creditor at the time of the petition, that it did not

lack disinterestedness, and that it did not hold an adverse interest to the Bankruptcy Estate for

rendering pre-petition legal services in connection with and in preparation of filing the

---

[12] The Court assumes without deciding that the services rendered from January 27, 2016, through February 8, 2016, were all necessary preparations for the case filing even though several entries appear to be questionable as continuing work on the "post-judgment collection defense work" disclosed in the Employment Application, especially given that the engagement letter was not prepared until February 8.

bankruptcy petition." [Doc. 107 at p. 7.] Such is for the Court to decide, not HD&C. Full disclosure is the only way that the Court can make such a decision. *See In re Roberts*, 75 B.R. 402, 407, 411 (D. Utah 1987), *aff'g in part* 46 B.R. 815 (Bankr. D. Utah 1985) ("The role of the courts in maintaining the integrity of a legal system cannot be abdicated and left to the Bar. . . . *In re Estes*, 57 B.R. 158, 162 (Bankr. N.D. Ala. 1986) . . . . [T]he law firm should have disclosed the debt owed to it by the corporation, made its arguments, and allowed the bankruptcy judge to apply the law.").

As stated by the Ninth Circuit in *In re Park-Helena Corp.*, 63 F.3d 877, 882 (9th Cir. 1995), *cited in In re Kisseberth*, 273 F.3d at 721, "[e]ven a negligent or inadvertent failure to disclose fully relevant information [in a Rule 2016 statement] may result in a denial of all requested fees." Further, "failure to comply with the disclosure rules is a sanctionable violation even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Id.* at 880.

The Court here will exercise its discretion and deny HD&C's request in its First Application for those services provided pre-petition. The Court does so as a sanction for HD&C's failure to disclose the pre-petition fees as required by § 329 and Rule 2016. Accordingly, the pre-petition fees incurred from January 27, 2016, through February 8, 2016, are disallowed, reducing the total amount of the application by $5,938.00.

## IV. POST-PETITION FEES AND EXPENSES

As for the remainder of HD&C's fee application, the Court is authorized to award "reasonable compensation for actual, necessary services rendered" pursuant to 11 U.S.C. § 330(a)(1). When making a determination if requested fees are reasonable, the Court considers, *inter alia*, "whether the services were necessary to the administration of, or beneficial at the time

at which the service was rendered toward the completion of, a case," 11 U.S.C. § 330(a)(3)(C), and compensation is disallowed for "services that were not reasonably likely to benefit the debtor's estate or necessary to the administration of the estate." 11 U.S.C. § 330(a)(4)(A)(ii). After consideration of the attachment to the First Application reflecting post-petition services rendered and for the reasons set forth below, the application is granted and fees are awarded to the extent allowed in accordance with the following determinations.

The Court first determines that the following entries are clerical in nature and not compensable as reasonable and necessary under § 330(a)(1):

| | | |
|---|---|---|
| 02/09/16 | EL | Prepare First Day Motions for Hearing (0.60) |
| 02/10/16 | EL | Draft fax cover to Aquachem enclosing First Day Motions (0.10) |
| 03/03/16 | EL | Filing of completion statements and schedules (0.90) |
| 03/10/16 | DBF | Review Order Employment of Counsel (0.10) |
| 03/10/16 | DBF | Notice of Appearance from State Attorney General (0.10) |

As such, the 1.6 hours billed by the paralegal at her $95.00 hourly rate ($152.00) and the 0.20 hours billed by Mr. Farmer at his $300.00 hourly rate ($60.00) are disallowed.

The Court also finds that the following entries are excessive based on the length as well as the formulaic nature of each document and/or service and shall be reduced from the time reflected in the entry to the time reflected in the end column:

| | | | |
|---|---|---|---|
| 02/09/16 | DBF | Review Notice from US Bankruptcy Court regarding additional information required statements and schedules (0.30) | 0.10 |
| 02/10/16 | EL | Review Order Directing Filing of Case Management Summary (0.30) | 0.10 |
| 02/10/16 | EL | Draft Certificate of Service of all 1st day Motions to Suntrust registered agent (0.30) | 0.10 |

| 02/11/16 | EL | Draft Amended Application to Employ HDC to include Passive Notice (0.80) | 0.10 |
| 02/11/16 | EL | Review LBR 9013-3 for service issues on Motions (0.40) | 0.10 |
| 02/11/16 | EL | Review Bankruptcy Rule 1007 regarding service on emergency hearing (0.40) | 0.10 |
| 02/18/16 | EL | Begin draft Case Management Summary (0.80) | 0.50 |
| 02/22/16 | EL | Revise Case Management Summary (0.30) | 0.20 |
| 02/22/16 | DBF | Revised case management summary (0.40) | 0.30 |
| 03/08/16 | DBF | Review Statements of Schedules on revised form (0.40) | 0.20 |

Accordingly, the fees shall be further reduced by $199.50, representing 2.1 hours reduced from the paralegal's time at her $95.00 hourly rate, and $150.00, representing 0.50 hours reduced from Mr. Farmer's time at his $300.00 hourly rate.

The Court additionally finds that the following entries consist of "lumped" services[13] and shall be disallowed in their entirety:

| 04/14/16 | DBF | Review appellate briefs and preparation for meeting with counsel regarding determination of claim (1.50 hrs) |
| 04/19/16 | DBF | Review Court Order in Chancery Court regarding potential proceeding and plan draft for reorganization (0.80 hrs) |
| 04/20/16 | BCW | Receipt and review of order and memorandum opinion and begin review of law (0.40 hrs) |

The fees shall again be reduced by $690.00, representing the 2.30 hours billed by Mr. Farmer at his $300.00 hourly rate, and by $80.00, representing the 0.40 hours billed by Mr. Williams at his $200.00 hourly rate.

Finally, the Court shall disallow the $210.00 in fees billed by Mr. Farmer on April 22, 2016, for 0.70 hours to "Review issues relative to drafting statements and schedules," because the statements and schedules were filed on March 3, 2016, and have not been amended. The

---

[13] *See Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 297 (6th Cir. 2016).

Court will likewise disallow the $60.00 in fees billed by Mr. Farmer on February 11, 2016, for 0.20 of an hour to "Review Application to Employ HDC" at his $300.00 hourly rate. This entry refers to an amended application to employ HD&C, which was filed only after the Court advised counsel at the hearing that the first application to employ did not comply with the Local Rules.

## V.  CONCLUSION

In summary, for the reasons stated herein, after deducting $5,938.00 for pre-petition, non-disclosed services and the additional $1,601.50 for clerical, excessive, and lumped billing entries, the Court determines that the Amended Application shall be granted in part, and HD&C shall be allowed fees in the amount of $18,334.00 and expenses in the amount of $785.83. An Order consistent with this memorandum opinion shall be entered.

FILED:  September 9, 2016

BY THE COURT

*/s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE
